Filed 12/31/13  P. v. Dimry CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057451 |
| v. | (Super.Ct.No. FVA022099) |
| LONNIE LEEVOY DIMRY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Teresa Torreblanca and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

1

On June 23, 2005, defendant and appellant Lonnie Leevoy Dimry pled nolo contendere to one count of home invasion robbery (count 1 – Pen. Code, § 211)[1]. Pursuant to his plea bargain, the court sentenced defendant to the aggravated term of nine years' imprisonment, with sentence suspended; dismissed the remaining counts charged against him; and placed defendant on three years' felony probation. On October 20, 2008, the People filed a third petition for revocation of defendant's probation. After numerous suspensions and reinstatements of criminal proceedings due to findings of defendant's mental incompetency, the court held a hearing on the People's petition, found defendant in violation of his probation, and sentenced him to the suspended term. On appeal, defendant contends he was denied due process and effective assistance of counsel when the court sentenced him without argument, without consideration of a current probation report, and without a statement of reasons. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2004, the victims were playing video games in a locked bedroom when defendant kicked open the door. Defendant was armed with a bat and accompanied by two other individuals. Defendant demanded money from the victims and became agitated when they said they did not have any. Defendant took one victim's wallet and both victims' cell phones. Defendant threatened one of the victims with the bat saying "I should kill you because you're a Mexican." The victims reported the incident after

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

defendant left.  Defendant was found soon thereafter in possession of the bat and the stolen property.

The People charged defendant on June 28, 2004, by information with two counts of home invasion robbery (counts 1 & 2 – § 211) and one count of criminal threats (count 3 – § 422).  On December 17, 2004, defendant's counsel expressed a doubt about defendant's mental competency to stand trial for further criminal proceedings.  On February 17, 2005, the court found defendant mentally incompetent.  On June 9, 2005, the court found defendant mentally competent.

On June 23, 2005, defendant pled nolo contendere to one count of home invasion robbery (count 1 – § 211) in return for dismissal of the remaining counts, suspension of the aggravated sentence of nine years' imprisonment, and imposition of three years' felony probation.  Defendant denied all the charges against him to a probation officer thereafter; defendant said he took the plea because he was tired of going to court.  Defendant admitted using methamphetamine and marijuana.  The probation officer opined, "defendant will most likely not successfully complete a grant of probation if he discontinues the use of his psychiatric medication."

On July 22, 2005, the court sentenced defendant according to his plea.  The court noted, "I want to make sure that [] [defendant] understands that this opportunity he's being given on probation is an opportunity that can only be extended to him this one time. If you run a foul [*sic*] with probation and violate probation for any reason and find yourself back here, there won't be any further discussion about putting you back on

3

probation or modifying some terms and conditions or anything else. [¶] Given the sentence that the Court has stayed execution of today, if you violate probation, [] [defendant], your next stop is state prison for nine years."

On October 15, 2007, the People filed a petition for revocation of defendant's probation. Defendant had been arrested on September 26, 2007, for contempt of court in violation of a term of his probation that he violate no law. On January 22, 2008, defendant waived his right to a hearing and admitted the allegation. The court revoked and reinstated defendant's probation.

On February 5, 2008, the People filed a second petition for revocation of defendant's probation. The People alleged defendant violated two terms of his probation: that he not violate any law and that he always carry valid identification.

On November 21, 2006, defendant had pled guilty to battery. On April 16, 2007, defendant was investigated by police for disobeying a condition of his probation in the battery case that he not annoy or harass the victim. Defendant called her four times; the victim reminded him of the restraining order; defendant then showed up at her work; and the victim called police.

On December 26, 2007, defendant was investigated by police when a call was made regarding a suspicious person loitering. When contacted, defendant gave a false name to the officer, reported he was living at the residence, but could not remember the name of the individual with whom he was living, and admitted trying to enter the home through the front and side doors. Defendant had no identification with him at the time.

4

On December 27, 2007, defendant pled guilty to possession of less than an ounce of marijuana and giving false information to a police officer.

The court referred the case to the probation office for the preparation of a supplemental probation officer's report. Defendant admitted all the allegations to the probation officer; however, defendant contended he had been dropped from his parents' insurance plan and lost access to psychiatric medication; thus, he was hearing voices and was complying with them in committing some of the offenses. The probation officer recommended defendant's probation remain revoked and the court sentence him to the suspended nine-year sentence.

At the hearing on the People's petition on April 17, 2008, the court reinstated probation for an additional five years, adding an additional term. The court observed, "[y]ou got kind of a break here. You've got a huge amount of time hanging over your head. There's a nine-year suspended sentence hanging over your head."

On October 20, 2008, the People filed a third petition for revocation of defendant's probation. Defendant had been arrested on October 15, 2008, for felony burglary. In a probation report dated November 18, 2008, the probation officer reported defendant had been arrested after voices told him to steal a shirt while he was cold and homeless. Defendant stated he had mental issues, was schizophrenic, could not function properly, had been off his medication for months, and heard voices telling him to hurt others.

5

The officer opined, "[t]he defendant is once again before the court and once again blaming his mental illness for his wrong doings [*sic*]. He insists he cannot be trusted when off his medications, as the voices tell him to harm others, yet he is not taking the medications which settle those voices, once more at no fault of his own. The defendant has been given multiple opportunities to comply with the terms and conditions of his probation; probation has been reinstated despite his state prison suspended sentence. Still he continues to commit crimes and takes no responsibility in the matter. It is only a matter of time before he listens to those voices and causes harm to another instead of just stealing a shirt. Despite the Court[']s numerous attempts to allow the defendant to get the appropriate help to deal with his mental health issues he refuses the help." The officer recommended defendant's probation be revoked and his nine-year suspended sentence be imposed.

On March 10, 2009, the date for defendant's scheduled probation revocation hearing, the court committed him to Patton State Hospital until his mental competence was restored. On October 6, 2009, the court found defendant had regained mental competency and reinstated criminal proceedings. On April 5, 2010, the court found defendant mentally incompetent again. On October 26, 2010, counsel stipulated defendant had regained mental competency; the court reinstated criminal proceedings.

On November 23, 2010, based upon consideration of a psychologist's report and the stipulation of counsel, the court found defendant mentally incompetent and suspended criminal proceedings. On July 22, 2011, after having read a report submitted from Patton

6

State Hospital, the court found defendant mentally competent to stand trial for further criminal proceedings.

On July 29, 2011, the court held the hearing on the People's petition for revocation of defendant's probation. Nichole Huber, a loss prevention agent for Target in Montclair, testified that on October 15, 2008, she was notified someone was selecting pieces of clothing and ripping off the tags. She turned her attention to the individual via the store's closed circuit television system; it was defendant. Defendant selected two T-shirts, ripped off the tags, and exited the store without paying for them.

Jacob Riedell, a Montclair police officer, was dispatched to Target in response to the reported theft. After Riedell read defendant his rights, defendant said he stole some T-shirts and got caught. Defendant reported having only $0.75 on him at the time and intending to steal the shirts when he entered the store. The court found defendant in violation of his probation and sentenced defendant to nine years' incarceration with custody credit of 1,482 days.

## DISCUSSION

Defendant contends counsel's failure to request, and the court's neglect in requiring, the preparation of a supplemental probation officer's report prior to the court's dispositional determination deprived him of constitutionally requisite effective assistance of counsel and due process. Specifically, defendant argues it had been nearly three years since the last probation officer's report was prepared, counsel for defendant made no argument for any other disposition, defendant apparently suffered from severe mental

7

illness, and the court failed to elucidate any reason for imposing the nine-year sentence. Thus, defendant was prejudiced by the lack of a current probation officer's report because the court appeared unaware of its discretion to reinstate probation. We disagree.

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.] [¶] 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' [Citation.] . . . '"[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . ."'" [Citation.] And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant. [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.)

When making a determination on whether to reinstate probation, a court errs by not ordering the preparation of a supplemental probation officer's report when the previous probation officer's report is more than six months old, especially when the defendant has not been in custody. (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 181.) Failure to order the preparation of a supplemental probation officer's report is

8

reviewed under the *Watson*[2] harmless error standard, i.e., whether there is a reasonable probability of a result more favorable to defendant if not for the error. (*Id.* at pp. 182-183 [Failure to prepare supplemental probation officer's report harmless error.].)

We agree the court should have ordered a supplemental probation officer's report prepared in advance of the hearing on revocation of defendant's probation. However, we hold defendant suffered no prejudice. Here, two prior probation officers' reports already recommended previous courts revoke defendant's probation and sentence him to the nine-year suspended term, one under a prior petition for revocation of defendant's probation. Defendant remained in custody since the last probation officer's report. It strains credulity to believe another report would have reflected more favorably on him.

To the extent defendant contends information contained in a supplemental probation officer's report would have informed the sentencing court of mitigating information occurring over the past few years relevant to sentencing, we note this court was already intimately familiar with the details of defendant's life during this period. The sentencing court first presided over a hearing on January 25, 2010, when the case was continued. It was the only court to hear the case from that date until its completion. The court considered multiple reports by health care professionals relevant to the mental competency hearings before it.[3] The court made multiple rulings based upon those reports. Thus, the sentencing court had far more information regarding defendant's

---

[2] *People v. Watson* (1956) 46 Cal.2d 818, 836.

[3] These reports are not a part of the record on appeal.

mental illness and progress during this period than has either counsel on appeal or this court.

As to defendant's ineffective assistance of counsel claim, we note it is defendant's burden to demonstrate the inadequacy of counsel in that counsel's performance was both deficient and prejudicial. "If the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected,"' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 875-876.) Here, defense counsel argued the court should not find defendant in violation of his probation. However, after the court found defendant in violation of his probation, the record fails to show why defense counsel failed to request the preparation of a supplemental probation officer's report or argue for a lesser disposition. Nevertheless, we observe she could readily have determined such efforts would have been futile. Thus, it is not reasonably probable a result more favorable to defendant would have been obtained had the court ordered a supplemental probation officer's report.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____

P. J.

We concur:


HOLLENHORST_____

J.



CODRINGTON_____

J.